[Civ. No. 41982. First Dist., Div. One. May 16, 1978.]

AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES (AFSCME), LOCAL 1650,
Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Appellants.

**914**

COUNSEL

Antenore & Pokras and Dennis A. Antenore for Plaintiff and Appellant.

Donald L. Reidhaar, Milton H. Gordon, Glenn R. Woods, Joseph L. Cowan and Susan Amateau for Defendants and Appellants.

OPINION

**ELKINGTON, J.**—Recent years have witnessed an accelerated public consciousness of the people's *right to information* about the conduct of their business by public officials, and of the people's *right to privacy*.

An expression of the people's right to information will be found in California's Public Records Act (hereafter the Act) found in Government

Code sections 6250-6261. There the Legislature reaffirmed the principle that "access to *information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.*" (Gov. Code, § 6250; italics added.)

However, in reasserting the people's "right to information," the Legislature took pains to point out that in the effectuation of that right, courts and legislatures must be mindful of the *"right of individuals to privacy, . . ."* (Gov. Code, § 6250; italics added.)

The right to privacy has acquired express constitutional recognition. Among the *inalienable rights* of the people of this state are those of *"pursuing and obtaining . . . privacy."* (Cal. Const., art. I, § 1; italics added.) It has elsewhere been given expression in appropriate cases, such as the authorization of certain tribunals to "make rules . . . providing for confidentiality of proceedings." (See, e.g., Cal. Const., art. VI, § 18, subd. (f).) And see *Craemer* v. *Superior Court,* 265 Cal.App.2d 216, 220-222 [71 Cal.Rptr. 193], where we pointed out many statutory and judicial declarations of this right.

The Act provides: "Public records are open to inspection at all times during the office hours of the state or local agency and every citizen has a right to inspect any public record, except as hereafter provided." (Gov. Code, § 6253, subd. (a).)

Among the Act's provided exceptions found to be here relevant are the following:

"Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy; . . ." (Gov. Code, § 6254, subd. (c).)

"The agency shall justify withholding any record by demonstrating . . . that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255.)

In a lucid exposition of the Act's subject matter it has been said:

"Government files hold massive collections which are roughly divisible into public business and private revelations. Statutory and decisional law

on public record disclosure reveals two fundamental if somewhat competing societal concerns—prevention of secrecy in government and protection of individual privacy. 'The people's right to know' is a rubric which often accompanies disclosure claims. The 'right to know' demands public exposure of recorded official action. A narrower but important interest is the privacy of individuals whose personal affairs are recorded in government files. Societal concern for privacy focuses on minimum exposure of personal information collected for governmental purposes. The California courts have equated the right of privacy with the right 'to be let alone,' which must be balanced against public interest in the dissemination of information demanded by democratic processes." (*Black Panther Party* v. *Kehoe,* 42 Cal.App.3d 645, 651-652 [117 Cal.Rptr. 106].)

To implement the needed "balancing" process, the Act (Gov. Code, § 6259) provides access to the courts where "public records are being improperly withheld from a member of the public, ... The court shall decide the case after *examining the record in camera,* if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow. [¶] If the court finds that the public official's decision to refuse disclosure is not justified ... he shall order the public official to make the record public. If the judge determines that the public official was justified in refusing to make the record public, he shall return the item to the public official without disclosing its content with an order supporting the decision refusing disclosure." (Italics added.)

We are brought to the factual context, and issues, of the case before us.

Apparently following the imposition of, or attempt to impose, disciplinary sanctions upon an employee (hereafter the employee) of the University of California at San Francisco, she reported many acts of alleged financial irregularities by two of her superiors. The university's chancellor ordered an "audit investigation" of the charges, and thereafter a voluminous "audit report" was furnished him. The employee, and the American Federation of State, County and Municipal Employees (AFSCME), Local 1650 (hereafter Union), made request upon the chancellor, under the Act, for a copy of the audit report. The request was denied by the chancellor for the reasons that its release "would constitute an unwarranted invasion of personal privacy" (see Gov. Code, § 6254, subd. (c)), and that "on the facts of the particular case the public interest

served by not making the record public clearly outweighs the public interest served by disclosure of the record" (see Gov. Code, § 6255).

It is notable at this point that no member of the Union was in any way the subject of the charges of misconduct preferred by the employee.

The employee and the Union thereupon commenced the instant judicial proceedings under section 6259 of the Act. The superior court examined the audit report *in camera,* as required.* Thereafter the court ruled, in effect, that the employee and the Union might have access to voluminous documentary evidence attached as exhibits to the audit report. But it otherwise denied inspection or copies of the report itself. An order was then entered allowing the limited discovery only, and awarding attorney fees of $350 for the services of counsel for the employee and the Union.

The Union has appealed from the order insofar as it denied full disclosure of the audit report.

The employee has not appealed, and through counsel has "specifically requested that this [court] be informed that she opposed the filing of the within appeal."

The university's regents and chancellor cross-appealed, but only from that portion of the order allowing attorney fees. However, in their brief it is stated that they "now decline to pursue [the] cross-appeal."

■ The Union describes its grievances as follows: "In the instant matter the University not only claims that it is entitled to permanently maintain the secrecy of the audit report, but refuses to publicly disclose the results of its investigation, the action it has taken with regard to any wrongdoing revealed thereby, and whether restitution has been made of any public funds which may have been misappropriated."

The university's audit report which was reviewed *in camera* by the superior court has been transmitted to this court. We perceive the issue before us to be whether the superior court abused its discretion by its implied determination that "on the facts of the particular case the public

---

*Neither party contends that the *in camera* proceedings were not such as are "permitted by subdivision (b) of Section 915 of the Evidence Code, . . ." (See Gov. Code, § 6259, 1st par.)

interest served by not making the [audit report] public clearly outweighs the public interest served by disclosure of the record."

Neither the Act, nor any judicial authority found by us expository of it, furnishes guidelines or other express assistance in this exacting determination. We therefore look generally to expressions of the state's high court in reasonably comparable areas.

We are aided greatly by the case of *Chronicle Pub. Co.* v. *Superior Court,* 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637], which concerned the public right to information concerning records of complaints of wrongdoing against members of the State Bar of California, a context, we opine, reasonably analogous to that of the case at hand. The high court concluded (p. 572) that: " 'Only strong public policies weigh against disclosure' " of such matters. Such a strong public policy was found in the case of trivial or groundless charges which often, "no matter how guiltless the attorney might be, if generally known, would do the attorney irreparable harm . . . ." (P. 569.) In such a situation the attorney was to be compared with " ' "public officers and employes" ' " generally, against whom such communications " ' "are to be considered as highly confidential, and as records to which public policy would forbid the confidence to be violated." ' " (Pp. 568-569.) But where the charges are found true, or discipline is imposed, the strong public policy against disclosure vanishes; this is true even where the sanction is a private reproval. In such cases a member of the public is entitled to information about the complaint, the discipline, and the "information upon which it was based." (P. 575.)

We are further of the opinion that a proper reconciliation of the Act and the constitutional right of privacy mandates that, in situations such as that before us, the recorded complaint be of a substantial nature before public access is permitted. And patently, it is in keeping with the rationale of *Chronicle Pub. Co.* and the express purpose of the Act that where there is reasonable cause to believe the complaint to be well founded, the right of public access to related public records exists. Courts should not be bound by a contrary determination of the public agency, for if that were so the Act's decree that—"access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state"—would be largely frustrated.

We apply these several criteria to our own *in camera* review of the audit report.

The audit report concluded that the greater part of the many accusations against the employee's superiors were wholly "unsupported by evidence"; others were found to be "without substance." Yet others were found to "represent either entirely acceptable practices, or matters which appeared to be minor violations of established university procedures having no cost or other unfavorable consequences" to the university. Generally we find ourselves in agreement. But we observe exceptions where, in our opinion, disclosure should have been allowed under the Act's mandate and the criteria we have alluded to.

The exceptions will be found in the following portions of the university's audit report: Item 2, pages 4-5; item 4, pages 6-10; last paragraph, page 26; pages 28-29. The failure of the superior court to order disclosure of those matters is found to be an abuse of discretion.

The superior court will modify its order in a manner not inconsistent with what we have said. As so amended, the order is affirmed. The defendants having abandoned their appeal, it is dismissed. Plaintiff will recover its costs of appeal, and the superior court will fix and award reasonable fees for its attorney's services on the appeal.

Racanelli, P. J., and Sater, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.