TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-301 |
| | : | |
| of | : | August 6, 1999 |
| | : | |
| BILL LOCKYER | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE H. PETER KLEIN, COUNTY COUNSEL OF MENDOCINO COUNTY, has requested an opinion on the following question:

Is a county auditor-controller prohibited from disclosing to the public information regarding the amount of money deducted from an elected county officer's salary to satisfy a state or federal tax lien?

CONCLUSION

A county auditor-controller is generally prohibited from disclosing to the public information regarding the amount of money deducted from an elected county officer's salary to satisfy a state or federal tax lien, but special circumstances may allow for such disclosure in a particular case.

ANALYSIS

We are advised that a district attorney, who was elected to office in 1998, disputes the amount of his federal and state income tax liabilities for the years 1977 through 1991. In 1991-1992, he spent nine months in a federal prison, having been convicted for failing to file federal tax returns, a misdemeanor. Both federal and state tax liens have been filed against his property. His tax disputes have been widely reported throughout the county, both before and after his election. Most recently it was reported in the local newspapers that the district attorney has "filed for bankruptcy protection from paying back taxes and penalties that the IRS contends total more than $3.4 million."

Some members of the public and the press wish to know the precise amount of money, if any, that is being deducted from the district attorney's salary to satisfy the state and federal tax liens. Other members of the public believe that such information does not relate to the district attorney's current official duties but instead relates to his past, private tax matters that should not be disclosed to the general public or press.

The question presented for resolution is whether the county auditor-controller is prohibited from disclosing the amount of the salary deductions, if any, that are being made to satisfy the federal and state tax liens. We conclude generally that such information is not disclosable but in the unique circumstances involved here, disclosure would not be prohibited.

Preliminarily, we note that Code of Civil Procedure sections 706.070-706.084[1] govern the withholding of money from an employee's salary for payment of a tax liability owed to the state. When the state serves a "withholding order for taxes" upon the taxpayer's employer (Code Civ. Proc., §§ 706.072, 706.074), the employer is required to pay over the amounts withheld (Code Civ. Proc., § 706.077, subd. (a)). The employer is also required to file an "employer's return" containing the information specified in Code of Civil Procedure section 706.126.

Federal tax law utilizes similar procedures. Failure to pay taxes results in the imposition of a lien. (26 U.S.C. § 6321.) The federal government may levy upon a taxpayer's accrued wages to satisfy the lien. (26 U.S.C. § 6331.) The salary of an employee of a state or local government may be levied upon by issuing an order to the government officer responsible for making the wage payments. (*Sims* v. *United States* (1959) 359 U.S. 108 [3 L.Ed.2d 667, 79 S.Ct. 641.)

Here, we are concerned with the right of privacy protected by the California Constitution.

---

[1] Revenue and Taxation Code section 18671 authorizes withholding from payments other than earnings.

Section 1 of article I of the Constitution provides:

> "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

In 67 Ops.Cal.Atty.Gen. 414 (1984), we analyzed the constitutional right of privacy with respect to whether the California Student Aid Commission could disclose to schools and institutional lenders the names of students who were delinquent in their payments to the State Guaranteed Loan Program or who had defaulted on their loans. We observed with respect to the governing principles:

> "In this state, privacy is expressly declared to be an inalienable right. (Cal. Const., art. I, § 1.) Although it has been only 12 years since the people elected to place privacy among the inalienable rights expressly guaranteed in the Declaration of Rights, traditional principles of constitutional law inform its application. [Citation.] Prior to 1972, privacy had been identified as a fundamental liberty implicitly guaranteed by the federal Constitution; as such, it is protected even from incidental encroachment absent the demonstration of some compelling interest that is both legitimate and overriding. [Citation.] We have previously alluded to such 'implicitly guaranteed' federal zones of privacy.

> " '. . . The Supreme Court of the United States, in Griswold v. Connecticut (1965) 381 U.S. 479, explicitly recognized the existence of certain "zones of privacy." The court found this right, while not expressly provided in the Constitution to be the result of the interrelationship of express constitutional provisions and to be necessary for the implementation of these express protections. . . . It would, of course, be impossible to enumerate all of the possible zones of privacy, but they have been held to include, by way of example, privacy "in associations" including privacy of membership lists of a constitutionally valid organization [citations], privacy in the "private realm of family life" [citation], privacy "surrounding the marriage relationship" [citation], privacy to one's home [citations], and privacy in one's personal financial affairs [citation]. The last cited case observed that in determining the constitutional propriety of any such limitation upon the fundamental right of privacy there must be a balancing of interests between the government's need to preserve the efficiency and integrity of the public service on the one hand and the right to maintain privacy in one's personal affairs on the other. In such a case, the government must demonstrate the necessity for such limitation upon the right in question and must show not merely that the restriction is rationally related to the accomplishment of a permissible purpose but that the need is compelling. Moreover, the intrusion must not be overly broad; it must be viewed in the light of less drastic means for achieving the same basic purpose. [Citations.]' [Citation.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Financial information clearly falls within the zone of privacy under article I, section 1, of the California Constitution [citations] which immunizes such information, including that in the custody of third parties, from disclosure [citations], except where (1) such disclosure is made pursuant to a compelling public interest which is both legitimate and overriding [citations], and (2) the scope of disclosure is narrowly circumscribed [citation]." (*Id.*, at pp. 419-421.)

We have no doubt that the constitutional right of privacy generally covers information about a person's personal financial affairs (see *Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 19; *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656; *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 243; *Sehlmeyer* v. *Department of General Services* (1993) 17 Cal.App.4th 1072, 1078; *Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313, 315; *Rifkind* v. *Superior Court* (1981) 123 Cal.App.3d 1045, 1050-1051; 67 Ops.Cal.Atty.Gen. 414, 420-421 (1986)), including tax obligations (see Rev. & Tax. Code, § 19542; 26 U.S.C. §§ 6103, 7213; *Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 6; *Webb* v. *Standard Oil of California* (1957) 49 Cal.2d 509, 513; *Brown* v. *Superior Court* (1977) 71 Cal.App.3d 141, 143-144). Although the amount of a district attorney's total salary is a matter of public record (§ 6254.8), deductions made to satisfy tax liens or for other purposes generally are not. (See Stats. 1998, ch. 324, § 11.11.) In 64 Ops.Cal.Atty.Gen. 575, 584 (1981), we stated with respect to the disclosure of deductions from the salaries of employees of a private contractor receiving a federal subsidy administered by a state agency:

". . . [W]e feel that disclosure of information about *deductions* that are taken from an individual carpenter's wages would amount to an unwarranted invasion of personal privacy. While amounts of deductions may be arrived at through formulae which are for the most part 'standardized,' in practice, they are computed on an individualized basis using not only data that we have regarded as personal and deserving of privacy (such as gross salary or wage classification) but also data which is totally unrelated to the carpenter's work (such as number of claimed exemptions or marital status) and the disclosure of which serves no public interest. Accordingly, we find that disclosure of the carpenters' deductions would constitute a particularly intrusive invasion into their privacy, without a countervailing public interest served by their disclosure."

As indicated in our prior opinions and by the courts (*Braun* v. *City of Taft* (1984) 156 Cal.App.3d 332, 346-347; see *CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 653-655; *New York Times Co.* v. *Superior Court* (1990) 218 Cal.App.3d 1579, 1584-1585), the public's interest in knowing specific information must be weighed against the individual's privacy interests when determining the scope of the constitutional right of privacy. Here, looking at the various factors concerning the proposed disclosure, we find particularly significant that the disclosure deals with the enforcement of federal and state tax liens. While the precise information in question has not previously been disclosed, the public is well

aware of the tax dispute between the district attorney and the tax officials. The federal and state tax liens on file are public records and the lien information is not confidential. (See *William E. Schrambling Accounting Corp.* v. *U.S.* (9th Cir. 1991) 937 F.2d 1485, 1489 ["the purpose of recording the lien . . . is to place the public on notice of the lien"]; *Lambert* v. *United States* (9th Cir. 1988) 854 F.2d 335, 338.)

The public interest would be served in knowing the manner in which the federal and state tax authorities are performing their official duties. Are delinquent taxes owed to the federal and state governments being collected? Is the district attorney seeking or receiving any special treatment from the tax officials due to his position as district attorney?

The public also has an interest in knowing whether the district attorney is in the process of solving his tax disputes and reducing his significant financial obligations as reported in the press. Disclosure may assure the public that the district attorney is not subject, for example, to possible undue influence caused by the scope of his financial difficulties. Here, we have a county officer who is charged with enforcing the law and a public interest in knowing whether, and to what extent, he is complying with the tax laws that he previously violated. In *CBS, Inc.* v. *Block*, *supra*, 42 Cal.3d at 655, the Supreme Court recognized that "[t]he interest of society in ensuring accountability is particularly strong where the discretion invested in a government official is unfettered . . . ." What the district attorney does in reducing his tax debts affects the public's trust in the performance of his official, discretionary duties.

The proposed disclosures, therefore, cannot be viewed in the same light as disclosing payroll deductions for medical insurance premiums or deferred compensation investments. The latter are voluntary deductions involving private decisions on how one's salary is to be spent. Here, on the other hand, we have a law enforcement official who is subject to the forced collection of delinquent tax debts, where he has been found guilty of violating the law.

Hence, we believe that the totality of the circumstances presented, including the nature of the information already disclosed and the public interest in preserving the integrity of official conduct, allows disclosure of the requested information without constituting a violation of the constitutional right of privacy. However, in providing the specific payroll information requested, the county auditor-controller must maintain the confidentiality of any information the disclosure of which is not justified by the public interest. (See *Braun* v. *City of Taft*, *supra*, 154 Cal.App.3d at 344-345; cf. *Campbell* v. *United States Civil Service Commission* (10th Cir. 1976) 539 F.2d 58, 62.)[2]

_____

[2] We note that the California Public Records Act (Gov. Code, §§ 6250-6270) does not prohibit the disclosure of any information but rather authorizes a public agency to withhold the disclosure of a particular record. (*CBS, Inc.* v. *Block*, *supra*, 42 Cal.3d at 652 ["The Act endows the agency with discretionary authority to override the statutory exceptions when a dominating public interest favors disclosure"]; *Register Div. of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 905; *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 773; *Berkeley Police Assn.* v. *City of Berkeley*

We conclude that a county auditor-controller is generally prohibited from disclosing to the public information regarding the amount of money deducted from an elected county officer's salary to satisfy a state or federal tax lien, but special circumstances may allow for such disclosure in a particular case.

\* \* \* \* \*

---

(1977) 76 Cal.App.3d 931, 941; *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 656.)  We thus need not discuss its provisions here.