Filed 12/9/15  Certified for Publication 12/21/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN CALDECOTT, <br><br>    Petitioner, <br><br>      v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br>    Respondent; <br><br> NEWPORT-MESA UNIFIED SCHOOL DISTRICT, <br><br>    Real Party in Interest. | G051917 <br><br> (Super. Ct. No. 30-2015-00767637) <br><br> O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Petition granted. Motion for judicial notice denied.

William M. Crosby for Petitioner.

No appearance for Respondent.

Parker & Covert, Spencer E. Covert and Michael T. Travis for Real Party in Interest.

         *          *          *

Real party in interest Newport-Mesa Unified School District (School District) denied petitioner John Caldecott's (Caldecott) request to produce certain documents made pursuant to the California Public Records Act (Gov. Code, § 6250 et seq.; all further statutory references are to this code unless otherwise stated; CPRA). Caldecott then filed a petition for writ of mandate in the superior court. After its in camera review of the documents, the court denied the petition, ruling that Caldecott already possessed the documents, making his request moot. The court denied the petition on the further ground the documents were connected to his claim of a hostile work environment, making the documents exempt from disclosure under the CPRA.

Caldecott's petition before us requests the same documents. He argues the court erred by finding his request was moot because he already possessed the documents. He seeks production under the CPRA so he may release the documents to the public without being subjected to claims of improperly disclosing confidential information. Caldecott also asserts there are several other bases for his complaint against defendant, dealing with alleged improprieties including hiring, salaries, and audit practices, not just a personal claim of a hostile work environment.

We conclude the public interest in disclosure of the documents outweighs any privacy interests and the CPRA requires their production. We grant the petition and remand the matter to the superior court. It shall conduct an in camera review of the requested documents to determine if any are protected by the attorney-client privilege. The documents shall also be redacted to delete the identities of and personal information about unrelated third parties. The court shall then enter a new order for School District to produce the nonprivileged or redacted documents.

## FACTS AND PROCEDURAL HISTORY

As alleged in his petition, Caldecott worked for defendant as Executive Director of Human Resources. During his tenure, Caldecott filed a complaint with

2

School District against its superintendent, Fred Navarro (Navarro). Caldecott alleges the complaint was based on several claims: 1) creating a hostile work environment against three of Navarro's "cabinet members"; 2) improperly approving and reporting compensation for an administrator, possibly inflating the retirement compensation; 3) recommending pay increases using improper criteria; 4) incorrectly reporting income used to calculate retirement income; 5) approving improper salaries for new employees; and 6) failing to audit the retirement agency's reporting practices. School District alleges the only complaint Caldecott made was a personnel complaint against Navarro.

Thereafter, School District's lawyer advised he had been authorized to hire an investigator to look into Caldecott's claims. Caldecott claims no investigator was retained and he was never interviewed; School District denies this.

Subsequently, School District's board sent Caldecott a written statement, which allegedly stated "Caldecott's complaint regarding . . . Navarro does not warrant any action by the Board beyond this response."[1]

Five to six weeks later Navarro terminated Caldecott without cause, which decision School District's board approved. Caldecott alleges this was in retaliation for his complaints about Navarro's alleged wrongful conduct.

Pursuant to the CPRA Caldecott then requested School District provide copies of its response to his complaint against Navarro and an e-mail Caldecott sent to School District's board regarding its response to his complaint (Documents). School District denied the request for the Documents, stating, in part, it could not disclose them "'because of the potential impact of an unjustified accusation on the reputation of an innocent public employee.'" School District relied on section 6354, subdivisions (c) and

---

[1] Neither Caldecott's complaint nor School District's response are part of the record. The response is one of the documents Caldecott seeks to have produced. In accordance with our order, School District filed under seal the documents Caldecott requested.

3

(k), exempting production of documents, "the disclosure of which would constitute an unwarranted invasion of personal privacy" or is prohibited by law.

Caldecott then filed his petition for writ of mandate and complaint for declaratory and injunctive relief in the trial court. It alleged the Documents should be released because he is a member of the public with "an absolute right to the records under the CPRA," and the public's interest in disclosure outweighed Navarro's interest in keeping the Documents confidential.

After hearing argument, the court examined the Documents in camera and then denied the request. It ruled Caldecott already had the Documents, making his request moot. Additionally, it found the Documents "are directly and inextricably linked to . . . Caldecott's claim of a hostile and abusive work environment, which is an internal personnel matter exempt from disclosure under CPRA." The court found the issue was not "investigation of a claim of public malfeasance" but Caldecott's hostile work environment claim. The court concluded it had an obligation to protect "the accuser and the accused from disclosure of matters related to the latter claims."

Additional facts are set out in the discussion.

## MOTION FOR JUDICIAL NOTICE

Three days before oral argument, School District filed a motion for judicial notice of a document entitled Teachers' Retirement Law Compliance Review Membership and Compensation Reporting Final Audit Report (capitalization omitted) dated July 20, 2015. We deny the request for several reasons.

First, the motion was untimely. The report and the letter transmitting it are dated July 20, 2015; the transmittal letter bears a superintendant's School District stamp of August 17, 2015. The gap in time is unexplained. In any event, even relying on the August date, there is no evidence of any reason, much less a good reason, why School District waited three months to file its motion.

4

Second, this document was not before the trial court. So, although School District did not couch its request in this context, in effect it is asking us to take additional evidence on appeal. (Code Civ. Proc., § 909 [new evidence taken "in the interests of justice"].) School District claims both the document is relevant to show Caldecott's claims "were false and improper" and School District properly concluded the claims regarding the retirement system did not show wrongdoing.

We are not persuaded. School District does not show how this audit responds to Caldecott's claims and we see none.

## DISCUSSION

### 1. Standard of Review

We conduct an independent review of an order denying a request for documents under the CPRA. (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336.) The trial court's findings of fact, if any, are reviewed using the substantial evidence test. (*Ibid*.) Here the court made no factual findings so we review the matter de novo.

### 2. The CPRA

The CPRA "'"provides for the inspection of public records maintained by state and local agencies." [Citation.] The Legislature enacted [the CPRA] . . . to give the public access to information in possession of public agencies in furtherance of the notion that government should be accountable for its actions and, in order to verify accountability, individuals must have access to government files. [Citation.] But "[r]ecognition of the importance of preserving individual privacy is also evident in [the CPRA]. The [CPRA] begins with the phrase: 'In enacting this chapter, the Legislature [is] mindful of the right of individuals to privacy . . . .' [Citation.]" [Citation.] "Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy."

5

[Citation.]' [Citation.]" (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750; *BRV*.)

"The CPRA embodies a strong policy in favor of disclosure of public records . . . ." (*California State University Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 831.) "Statutory exemptions from compelled disclosure are narrowly construed. [Citation.]" (*Ibid.*) "'[T]he government agency opposing disclosure bears the burden of proving that one or more [of the exemptions] apply in a particular case.' [Citations.]" (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63; § 6255, subd. (a).)

*3. Mootness*

The court ruled Caldecott's request for the Documents was moot because he already had copies of them. At the hearing, the court inquired of Caldecott's counsel, "I'm going to tell you one more time. [School District is] not going to actually send – there's no need, your client doesn't even want [School District] to send the documents over. He just wants the freedom to produce them to third parties, right?" And counsel responded, "Correct."

School District relies heavily on Caldecott's actual possession of the Documents. It cites several cases and devotes a number of pages to support the court's finding of mootness, claiming Caldecott's rights to the Documents are abstract and unnecessary. But this completely misses the point. The issue is not his current possession of the Documents. Caldecott seeks the Documents so he has the ability to publicly promulgate them without fear of any liability for doing so.

*Consolidated Irrigation Dist. v. Superior Court* (2012) 205 Cal.App.4th 697, on which School District relies, is inapt. The case did not deal with mootness but instead held production was not required because the real party in interest did not have possession of the documents. (*Id.* at pp. 710-711.)

6

School District argues Caldecott is not entitled to the Documents because the CPRA pertains only to an individual seeking records (§ 6253, subd. (a) ["any person" may request records], not someone acting on behalf of the general public. But nothing in the CPRA prohibits a person from acting on behalf of the public. Caldecott's request is akin to a reporter seeking documents for the purpose of disseminating information to the public. (See, e.g., *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 284, 303 [documents sought by newspaper subject to disclosure under CPRA]; *BRV*, *supra*, 143 Cal.App.4th at p. 747 [same].)

Further, "[t]he motive of the particular requester in seeking public records is irrelevant (§ 6257.5 [no limit on disclosure of records based on purpose if documents otherwise subject to production]), and the CPRA does not differentiate among those who seek access to them. [Citation.] Moreover, the purpose for which the requested records are to be used is likewise irrelevant. [Citation] '[T]he question instead is whether disclosure serves [a] public [purpose].' [Citation.]" (*Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 242, italics omitted.)

"'[T]here is no practical way of limiting the use of the information, once it is disclosed, to the purpose asserted by the requestor. Indeed, there is no way of assuring that the information will not be used by the requestor for other purposes, or, for that matter, will not be used by third parties who manage to obtain the information once it has been disclosed to [the requestor].' [Citation.]" (*County of Los Angeles v. Superior Court* (2000) 82 Cal.App.4th 819, 826 [requestor used the CPRA instead of discovery to obtain documents for litigation].)

School District's additional argument that nothing in the statute requires it to "'publish'" records it has already released under the CPRA is flawed for two reasons. Caldecott has not requested School District publish the Documents. More important, School District has not released the Documents to Caldecott but has denied his request.

7

Not only that, School District's argument that any interested member of the public may seek a copy of the Documents is somewhat disingenuous. According to one of the newspaper articles in the record, School District refused the requests of a newspaper and the teacher's union to produce the Documents.

We also are not persuaded by School District's claim Caldecott is free to release any of the Documents is his possession and that School District has not tried to keep him from doing so. If it did not object to such release, it would not have denied Caldecott's CPRA request and strenuously opposed both writ petitions. The heart of School District's opposition is that the Documents should not be released, based on several CPRA exemptions, stressing the alleged privacy of their contents.

Caldecott's possession of copies is not a basis to withhold the Documents.

*4. Weighing Privacy Interests Against Public Interest in Disclosure*

The court ruled Caldecott's claim against School District concerned a hostile work environment, not a claim of malfeasance by a public agency or official, and as such was a personnel matter exempt from disclosure. As noted above we construe exemptions narrowly and School District has the burden to show an exemption applies. (*California State University Fresno Assn., Inc. v. Superior Court*, *supra*, 90 Cal.App.4th at p. 831.)

Pursuant to section 6254, subdivision (c), documents exempt from production include "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." In determining whether the exemption applies, we must weigh the public's interest in disclosure against protection of privacy interests. (*BRV*, *supra*, 143 Cal.App.4th at p. 755.)

We first "'determine whether disclosure of the information would "compromise substantial privacy interests; if privacy interests in given information are *de minimis* disclosure would not amount to a 'clearly unwarranted invasion of personal privacy,' [citation], . . . ." [Citation.]' [Citation.]" (*BRV*, *supra*, 143 Cal.App.4th at p.

8

755.) We then decide "'whether the potential harm to privacy interests from disclosure outweighs the public interest in disclosure.' [Citation.]" (*Ibid*.) In considering these factors we look at "'"the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty." [Citation.]' [Citation.]" (*Ibid*.)

The facts in *BRV* are strikingly similar to ours and its analysis and holding are instructive. In *BRV* after a school district received complaints its superintendant had sexually harassed and verbally abused students, it retained a private investigator. The investigator prepared written summaries of interviews with numerous parents, students, and employees. She also prepared several memoranda explaining how she had conducted the investigation, and wrote a lengthy explanation of her findings, submitting all of the documents to the district. The district sent to certain complainants a copy of the summary of his or her interview. BRV obtained copies of certain of those documents.

In the meantime, the superintendent resigned on condition he be on paid administrative leave for approximately six months before his resignation effective date. During this time his salary was increased. The district agreed not to release any documents in the superintendent's personnel file without his consent. Within the next month the district received approximately 40 tort claims based on the superintendent's alleged misconduct.

BRV filed a request under the CPRA for copies of all of the documents pertaining to the investigator's report, her hiring by the district, and the superintendant's resignation. When the district refused to provide the investigator's report on the ground it was exempt under the CPRA, BRV filed a petition for writ of mandate.

9

In weighing the superintendant's privacy interest against the public's right to know, the court held the documents should be disclosed under the CPRA.[2] (*BRV*, *supra*, 143 Cal.App.4th at p. 760.)

Although the superintendent had a reasonable expectation of privacy in his personnel file (*BRV*, *supra*, 143 Cal.App.4th at p. 756), "[w]ithout doubt, the public has a significant interest in the professional competence and conduct of a school district superintendent . . . . It also has a significant interest in knowing how the District's Board conducts its business, and in particular, how the Board responds to allegations of misconduct committed by the District's chief administrator" (*id*. at p. 757).

In balancing privacy against the public's interest in disclosure, *BRV* considered the public's concern about how both the superintendent and the board responded to the complaints lodged against the former. It pointed out the resignation agreement could be viewed by the public as a "'sweetheart deal'" to privately resolve the claims rather than subject the accusations to public scrutiny. "The public's interest in judging how the elected board treated this situation far outweighed the Board's or [the superintendent's] interest in keeping the matter quiet." (*BRV*, *supra*, 143 Cal.App.4th at p. 759.) The court concluded the public's right to know outweighed any privacy interests due to the superintendent's "position of authority as a public official and the public nature of the allegations." (*Ibid*.)

The court ruled the report should be provided despite the fact the report found most of the allegations "were not sufficiently reliable," because the court "could not conclude the allegations were so unreliable the accusations could not be anything but false." (*BRV*, *supra*, 143 Cal.App.4th at p. 759.) Although the superintendent was

---

[2] The disclosure was subject to redaction of the identities of parents, students, faculty, and staff named in the documents because the identities did "not help the public understand how the [district] responded to the allegations involving [the superintendent]." (*BRV*, *supra*, 143 Cal.App.4th at p. 759.)

exonerated of most of the "serious allegations," the public was entitled to know why he was exonerated and how the district dealt with the charges against him. (*Ibid*.) As to the weighing process, due to the superintendent's position as a public official the court "applied a lesser standard of reliability than it otherwise would for a nonpublic official." (*Ibid*.)

*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 is also illustrative. There, the issue was whether records concerning investigation of and discipline against a teacher for sexual harassment should be provided to a parent. The court held the teacher's right to privacy did not outweigh the public interest in disclosure even though the teacher was not a "'high profile' public official" as was the superintendent in *BRV*. (*Id*. at p. 1275.) The public had "a legitimate interest in knowing whether and how the [defendant] enforce[d] its sexual harassment policy." (*Ibid*.)

Here, as in *BRV*, there is a strong public interest in judging how Navarro responded to Caldecott's claims, especially in light of his decision to almost immediately terminate Caldecott without cause. Likewise, there is the same strong public interest in assessing how School District's elected board treated the serious misconduct allegations against its highest ranking administrator. The numerous newspaper articles and blogs included in the record confirm that. Disclosure will shed light on School District's performance of its duties. (*BRV*, *supra*, 143 Cal.App.4th at p. 755.)

In an attempt to counter the conclusion Caldecott's claims are a matter of public interest, School District argues Caldecott was late in claiming whistleblower protection, thus attempting to transform his hostile work environment claim into something bigger. In support, School District relies on definitions in several Education and Government Code sections, to the effect that because Caldecott was a management employee he was not protected by the whistleblower statute. Not so.

11

The Education Code gives a "person" the right to sue "an employee" acting in a "supervisory position" who has retaliated against the person for making complaints or disclosing information. (Ed. Code, §§ 44112, subds. (a), (d), 44113, subd. (d); § 3540.1, subds. (g), (j).) Management employees, such as Caldecott, are not excluded from the protection of the whistleblower statutes.

Nor are management employees such as Navarro exempt from liability if they were acting in a supervisory capacity. (*Hartnett v. Crosier* (2012) 205 Cal.App.4th 685, 691; Ed. Code, § 44113.)

In any event, Caldecott's status is irrelevant. Whether he is or is not a whistleblower has nothing to do with whether he is entitled to the Documents under the CPRA. The Documents concern a matter of public interest that, on balance should be produced. School District did not meet its burden to overcome a narrow construction of section 6254, subdivision (c).

"The basic goal [of the CPRA] is to open agency action to the light of public review, with its core purpose designed to '"contribut[e] significantly to public understanding of the operations or activities of the government."' [Citation.]" (*Los Angeles Unified Schools Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 241, italics omitted; see also (*Marken v. Santa Monica-Malibu Unified School Dist.*, *supra*, 202 Cal.App.4th at pp. 1271-1272 [CPRA facilitates "'strong public policy supporting transparency in government'"].) Production of the Documents will accomplish that goal.

 5. *Claimed Improprieties*

The trial court denied production, in part on the grounds the dispute between Caldecott and School District did not concern alleged public malfeasance but only Caldecott's claim of a hostile work environment, i.e., an "internal personnel matter." The court concluded it needed to protect School District, Navarro, and Caldecott from disclosure of that matter.

12

School District argues those are factual findings to which we must defer. We disagree.

As a preliminary matter, the fact one of Caldecott's claims concerns a hostile work environment does not necessarily make it a personnel matter that should not be disclosed. Certainly Caldecott is not concerned that the matter be kept secret. Additionally, in the context of all of Caldecott's claims and as discussed above, there is no valid reason why this particular claim of a hostile work environment should remain concealed.

Furthermore, we are required to independently review documents in camera to "determine whether they reveal sufficient indicia of reliability to support a reasonable conclusion that the complaint was well founded." (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1047.)

We conducted an independent review and disagree with the trial court's overly generalized characterization of the Documents. Although some of the Documents do bear upon Caldecott's hostile work environment claim, they also pertain to the allegations Caldecott made in the petition, i.e., that Navarro committed irregularities as to compensation, income reporting for retirement purposes, and audit reporting to the retirement agency.

Our review leads us to conclude there are sufficient indicia of reliability to support disclosure of the Documents. Because of Navarro's position as a public official, like the superintendent in *BRV, supra*, 143 Cal.App.4th 742, we may use a "lesser standard of reliability." (*Id*. at p. 759.) In addition, Caldecott was one of Navarro's leading subordinates, employed by School District for 10 years in its human resources department, and most recently as the Executive Director of Human Resources. Without in any manner determining the truth or accuracy of the allegations, this lends weight and credibility to the claims. There is no evidence to support School District's claim Caldecott is nothing more than a disgruntled employee.

13

In *BRV* the report of the independent investigator found most of the allegations against the superintendent "were not sufficiently reliable." (*BRV*, *supra*, 143 Cal.App.4th at p. 759.) Yet the court still ordered disclosure because it "could not conclude the allegations were so unreliable the accusations could not be anything but false." (*Ibid*.) Additionally, the court ruled, the public was entitled to know why and how the district had determined how to deal with the claim against the superintendent. (*Ibid*.)

Despite School District's claim its board found none of the allegations against Navarro was well founded, we cannot conclude the allegations against Navarro and School District are so unreliable that they "could not be anything but false." There is no requirement that "imposition of discipline or 'found to be true' is a prerequisite to release of the complaints to the public." (*Bakersfield City School Dist. v. Superior Court*, *supra*, 118 Cal.App.4th at p. 1046.) School District's repeated description of the claims against Navarro as meritless does not make them so. And there is no evidence the trial court impliedly found Caldecott's complaints against Navarro were "not well founded [and] possibly defamatory."

As in *BRV* the public is entitled to know how School District dealt with Caldecott's claims and why the School District came to its conclusions, including exoneration of Navarro and termination of Caldecott without cause.

*6. Exemption Under Section 6255*

School District next argues the Documents are exempt from production under section 6255, subdivision (a), which provides that documents need not be produced when "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." This so-called "'deliberative process privilege'" is "'a qualified, limited privilege not to disclose or to be examined concerning not only the mental processes by which a given decision was reached, but the substance of conversations, discussions, debates, deliberations and

14

like materials reflecting advice, opinions, and recommendations by which government policy is processed and formulated.' [Citations.]" (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 305.)

In *Lodi*, the court refused to apply the deliberative process privilege, pointing out that "'[n]ot every disclosure which hampers the deliberative process implicates the deliberative process privilege.'" (*Citizens for Open Government v. City of Lodi*, *supra*, 205 Cal.App.4th at p. 306.) It found that the defendant had not met its burden to show the public interest in nondisclosure outweighed the public interest in disclosure of documents pertaining to an environmental impact report. (*Id.* at p. 307.)

School District relies on the declarations of Navarro and Martha Fluor, the president of School District's board, filed in the trial court in opposition to Caldecott's petition for writ of mandate. Navarro makes a conclusory claim that production of the Documents will "impede the frank discussions" where "high-level administrators debate the merits of [School] District programs." Fluor states "Caldecott's complaint specifically concerned internal policy debate." Both mention a copy of the first of the two Documents, the letter from School District to Caldecott responding to his complaint.

This is not a sufficient showing the public interest in nondisclosure outweighs the interest in disclosure. First, there is no evidence School District's response contains the substance of or excerpts from actual discussions or debate, or information showing how government policy was formed. Second, other than Navarro's conclusory statement, nothing shows production of this Document will interfere with discussions or debate. Rather, as shown above, the public interest in disclosure is compelling and is not overcome by the limited, qualified public disclosure exemption.

*7. Exemption Under Section 6254, Subdivision (k)*

School District also argues production is not required under section 6254, subdivision (k), which protects from disclosure "records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to,

15

provisions of the Evidence Code relating to privilege." School District relies on two privileges, official information (Evid. Code, § 1040) and attorney-client (*id*., § 954).

### a. *Official Information*

Evidence Code section 1040 gives a public entity the privilege to withhold official information if its disclosure is contrary to the public interest because the necessity of preserving confidentiality "outweighs the necessity for disclosure in the interest of justice . . . ." (Evid. Code, § 1040, subd. (b)(2).) Official information is defined as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (*Id*., § 1040, subd. (a).)

Even assuming for purposes of discussion School District has proven the information in the Documents qualifies as "official information," we are not persuaded by School District's claim it should not have to produce the Documents because they contain "meritless complaints about its internal decisionmaking processes." Nor do we give credence to its claim production would have a chilling effect on "the important role" of senior administrators in participating in deliberations. We have already considered and resolved School District's contentions Caldecott's claims are without merit and that production of the documents will allegedly interfere with deliberations. The "important role" of senior administrators supports disclosure of claims against them and the public's right to know how they are performing in their offices.

### b. *Attorney-Client Privilege*

School District maintains certain of the Documents were communications to or from its lawyers and therefore protected from disclosure by the attorney-client privilege. This may or may not be true.

A confidential communication between a lawyer and his or her client is protected from disclosure. (Evid. Code, § 954.) But not all communications with attorneys are subject to that privilege. For example, the privilege does not shield from

16

disclosure underlying facts that may be set out in the communication. (*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 639.) Likewise, the privilege does not protect "independent facts related to a communication . . . ." (*Id*. at p. 640.) Further, the mere fact nonprivileged information is relayed to an attorney does not shield the communication. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 735.)

In addition, "[t]he privilege does not apply to communications to an attorney who is transacting business that might have been transacted by another agent who is not an attorney [citation]." (*Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 32.) "For example, the privilege is not applicable when the attorney acts merely as a negotiator for the client or is providing business advice [citation]; in that case, the relationship between the parties to the communication is not one of attorney-client." (*Costco Wholesale Corp. v. Superior Corp.*, *supra*, 47 Cal.4th at p. 735.) And there may be other exceptions to the attorney-client privilege that apply here.

Some of the Documents may be protected by the attorney-client privilege. We remand this matter back to the superior court for an additional in camera inspection to determine what if any of the Documents are subject to the attorney-client protection. Any Documents the court determines are protected by that privilege may be withheld from production by School District.

*8. Attorney Fees*

In his prayer, Caldecott seeks attorney fees pursuant to section 6259, subdivision (d), which mandates an award of attorney fees and costs if a plaintiff prevails. School District contends fees should be denied because Caldecott already possesses the Documents. Again we are not persuaded.

"A plaintiff prevails within the meaning of section 6259, subdivision (d), '"when he or she files an action which results in defendant releasing a copy of a

17

previously withheld document." [Citation.]' [Citations.] An action under the Public Records Act results in the release of previously withheld documents 'if the lawsuit motivated the defendants to produce the documents.' [Citations.] 'Cases denying attorney fees to a plaintiff under the act have done so because substantial evidence supported a finding that the "litigation did not cause the [agency] to disclose any of the documents ultimately made available . . . ." [Citations.]' [Citation.]" (*Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1085, italics omitted.)

Here, there is no dispute that School District will not produce the Documents unless ordered to do so. Caldecott was forced to file his writ petition to obtain the Documents under the CPRA because School District refused to provide them. As discussed above, the fact Caldecott has a personal copy is irrelevant.

Likewise, that some of the Documents may be withheld based on attorney-client privilege does not change this result. (*Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1391 [attorney fees awarded when fewer than all documents requested are ordered produced].) Therefore, Caldecott is entitled to attorney fees.

## DISPOSITION

The petition is granted. The matter is remanded back to the trial court to review the Documents in camera and determine which, if any, are subject to the attorney-client privilege. This shall be done within 90 days after remittitur. Within that time period the court shall also review the Documents to determine whether the identities of or any other irrelevant personal information about unrelated third parties should be redacted to protect their privacy rights. (*BRV*, *supra*, 143 Cal.App.4th at p. 759.) The court is ordered to enter a new order that School District produce all of the Documents except those it has determined are subject to the attorney-client privilege, redacted as necessary to protect third party privacy rights, if any.

The motion for judicial notice is denied.

18

Caldecott is entitled to attorney fees, including on appeal, and is awarded costs on appeal, all amounts to be determined by the trial court.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

Filed 12/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN CALDECOTT, | |
| Petitioner, | |
| v. | G051917 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 30-2015-00767637) |
| Respondent; | ORDER CERTIFYING OPINION FOR PUBLICATION |
| NEWPORT-MESA UNIFIED SCHOOL DISTRICT, | |
| Real Party in Interest. | |

    Petitioner requested that our unpublished opinion, filed on December 9, 2015, be ordered published.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The request for publication is GRANTED.

                THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.