Filed 2/28/23  Rodriguez v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RAÚL RODRÍGUEZ et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF MONTEREY COUNTY, <br><br> Respondent; <br><br> JOSE ANDRES SANDOVAL, <br><br> Real Party in Interest. | H049836 <br> (Monterey County <br> Super. Ct. No. 21CV000070) |

Hartnell Community College District and former District Interim Superintendent-President Raúl Rodríguez petitioned this court for writ review of a trial court order requiring the District to disclose certain records to Jose Andres "Andrew" Sandoval pursuant to the California Public Records Act (CPRA; previously codified as Gov. Code, § 6250 et seq. and recently recodified and reorganized as Gov. Code, § 7921.000 et seq.).[1]  The writ petition presents two distinct issues.  First, the trial court ruled that District e-mail records concerning the business of an unrelated public charter school are

---

[1] Undesignated statutory references are to the Government Code.

public records subject to the provisions of the CPRA. Second, the trial court ruled that the CPRA's personnel file exemption (§§ 7920.505; 7927.700) did not exempt a complaint Sandoval filed against a District employee, or certain related communications from the District to Sandoval, from disclosure. We agree with the trial court. Accordingly, we deny the District and Rodríguez's petition for writ of mandate.

## I. BACKGROUND

On January 8, 2021, Sandoval filed a petition for writ of mandate, naming the District and Rodríguez in his official capacity as respondents. Through the petition, Sandoval sought to compel the District to disclose certain documents during specified time periods: (1) e-mails sent and received by Augustine Nevarez, using his District e-mail account, concerning Oasis Public Charter School; and (2) Nevarez's disciplinary records.

In the writ proceedings, Sandoval submitted a declaration describing his reasons for submitting underlying CPRA requests. Sandoval described himself as "a parent and active in the community working to improve education for Monterey County's children." Sandoval sent his children to Oasis. "As a parent with kids at the school and a community activist," Sandoval became "concerned about mismanagement and other problems at Oasis." Acting on these unspecified concerns, Sandoval submitted complaints to the Alisal Union School District, which issued Oasis's charter, and California's Fair Political Practices Commission. Sandoval asserts that Oasis retaliated against him through its board and administrators.

During the relevant time period, Nevarez's "fulltime job was Director of Student Affairs at Hartnell Community College." Nevarez simultaneously served as the President of Oasis's board. In Sandoval's view, unspecified events that transpired during Nevarez's "tenure as President of the Oasis board" are "a stain on the school that exists to this day."

2

In April 2018, to obtain information about Oasis, Sandoval first requested from the District all e-mails sent during a specified date range to or from Nevarez's District e-mail account. Sandoval believed his request was likely to return information about Oasis's business based on his past interactions with Nevarez. Specifically, in September 2017, Nevarez sent Sandoval an e-mail from his District e-mail account directing Sandoval to "only send information that is pertinent to [Nevarez's] role as a[n] [Oasis] Board member" to that address. Thereafter Sandoval frequently communicated with Nevarez about Oasis business using Nevarez's District e-mail account. Sandoval subsequently narrowed his requests, targeting e-mail correspondence to or from e-mail addresses used by the third parties with whom Nevarez communicated about Oasis business. In December 2019, the District notified Sandoval that it would not produce Nevarez's e-mails relating to Oasis on the ground that these did not relate to the District's business and were not, in the District's view, public records subject to the CPRA.

On December 31, 2019, Sandoval submitted a complaint about Nevarez to the District. In the complaint Sandoval lodged against Nevarez, which Sandoval publicly filed in the trial court as an exhibit to his petition, Sandoval alleged: (1) Nevarez used his Hartnell e-mail address, including during times when he was not on break, to conduct business for the Oasis board, including in furtherance of the Oasis Executive Director's violation of state law by hiring a landscaping business in which she had a financial interest, and for other personal purposes; (2) Nevarez used his Hartnell computer to access obscene material; (3) Nevarez used Hartnell's e-mail system to "communicate about sexual activity;" (4) Nevarez caused stipends to be issued to an individual with whom he had a "personal relationship," including in exchange for donations, while accepting donations from similar companies without payment; (5) Nevarez threatened Sandoval and made a false statement about him; (6) Nevarez made false statements about Oasis business at an Oasis board meeting; and (7) Nevarez "possibl[y]" mishandled an investigation into a specified individual.

3

In an April 16, 2020 letter signed by its Vice President of Human Resources and EEO, the District informed Sandoval, "To the extent that your allegations raise personnel issues, the District has conducted an appropriate investigation, and any potential personnel issues have been addressed.  Due to the District's obligations with respect to employee and student confidentiality, the District cannot share the specific investigative findings with you.  However, the District would like to formally notify you that it has taken appropriate remedial actions as a response to the findings of its investigation."  The District "express[ed] its sincere appreciation to [Sandoval] for taking the time to provide [the] information and documentation" submitted with the complaint and told Sandoval that "the information you have brought forth is important and informative."

Not satisfied with the District's written response, Sandoval continued to ask for information about the District's investigation.  Sandoval spoke to Nevarez's supervisor, who reportedly answered, " 'We took care of it already[,]' [you] 'have to trust the process' and . . . 'it won't happen again.' "

In September 2020, Sandoval requested Nevarez's disciplinary and investigative records from the District, within a specified date range that encompassed the filing of the complaint and subsequent investigation.  The District identified 84 pages of responsive documents.  These were (1) what the District now described as Sandoval's "unsubstantiated" complaint, (2) a two-page letter and a one-page e-mail the District sent to Sandoval, and (3) various other District communications and notes concerning Sandoval's complaint, as to which the District asserted attorney-client privilege and/or attorney work product protection, among other privileges.  The District stated that no other disciplinary records or investigative reports in the relevant timeframe existed, because none were created.  The District provided invoices related to the Nevarez investigation to Sandoval, but refused to disclose Sandoval's complaint and certain other related documents on the ground that disclosure would constitute an unwarranted invasion of personal privacy and, as to several of the documents, its claims of privilege.

4

Sandoval's writ petition followed. Nevarez moved to intervene in the trial court proceedings but did not renew the request after his motion was denied without prejudice.

The trial court (1) granted Sandoval's request for a writ of mandate directing the District to disclose Oasis e-mails throughout the specified time period that were stored on the District's server; and (2) granted Sandoval's request for Nevarez's disciplinary and investigative records, but excluded most of the disputed documents from the scope of its order, based on the District's contention that those documents were exempt from disclosure pursuant to the attorney-client privilege and/or attorney work product doctrine. Rodríguez and the District timely petitioned this court for writ review.[2] This court stayed the trial court proceedings to permit further consideration of the issues raised by the writ petition.

## II. DISCUSSION

### A.    *Standard of Review*

We review de novo the trial court's ruling directing disclosure of records by a public official, although express and implied factual findings made by the trial court will be upheld if based upon substantial evidence. (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1323; *Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 236-237 (*Los Angeles Unified*); *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1016.) "Interpretation of the CPRA and its application to undisputed facts present questions of law subject to de novo appellate review." (*Los Angeles Unified*, *supra*, 228 Cal.App.4th at p. 237.) Moreover, in the absence of factual findings "we review the matter de novo." (*Caldecott v. Superior Court* (2015) 243 Cal.App.4th 212, 218 (*Caldecott*).)

---

[2] The trial court served its ruling on the petition for writ of mandate by mail, and only by mail, on February 7, 2022. Accordingly, the present petition, filed exactly 25 days later, is timely. (See § 7923.500, subds. (b)-(c).)

5

**B.**     *The California Public Records Act*

"The CPRA and the Constitution strike a careful balance between public access and personal privacy." (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616 (*San Jose*).)  " 'Openness in government is essential to the functioning of a democracy. "Implicit in the democratic process is the notion that government should be accountable for its actions.  In order to verify accountability, individuals must have access to government files.  Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." ' " (*Id*. at p. 615.)  "However, public access to information must sometimes yield to personal privacy interests." (*Ibid*.)

"In general, [the CPRA] creates 'a presumptive right of access to any record *created or maintained* by a public agency that relates in any way to the business of the public agency.' (*Sander v. State Bar of California* (2013) 58 Cal.4th 300, 323, . . . italics added.)  Every such record 'must be disclosed unless a statutory exception is shown.' (*Ibid*.)  [Former section] 6254 sets out various exemptions, 'many of which are designed to protect individual privacy.' [Citation.]  The Act also includes a catchall provision exempting disclosure if 'the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure.' [Citation.]" (*San Jose*, *supra*, 2 Cal.5th at p. 616; see also §§ 7920.100, 7920.505, 7922.000.)

Pursuant to the California Constitution, " 'A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be *broadly* construed if it furthers the people's right of access, and *narrowly* construed if it limits the right of access.' (Cal. Const., art. I, § 3, subd. (b)(2), italics added.)  ' "Given the strong public policy of the people's right to information concerning the people's business ([former] Gov. Code, § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)), 'all public records are

subject to disclosure unless the Legislature has *expressly* provided to the contrary.' " ' "
(*San Jose*, *supra*, 2 Cal.5th at p. 617; see also §§ 7920.100, 7921.000, 7922.000.)

## C.   *Oasis E-mails*

The District contends that Nevarez's Oasis-related e-mails are not public records because they do not relate to the District's business.  Reading the statute more broadly, we conclude that the e-mails are public records because the e-mails relate to "the public's business," and all other essential elements of the statutory definition of "public records" are satisfied.

### 1.   *Legal Principles*

"Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record" absent a statutory exception.  (§ 7922.525, subd. (a).)  Unless there is a statutory exemption, "each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment" of certain fees.  (§ 7922.530, subd. (a).)

The CPRA defines the term "public record" to include " 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.' ([Former] § 6252, subd. (e)[.])  Under this definition, a public record has the following aspects.  It is (1) a writing, (2) with content relating to the conduct of the public's business, which is (3) prepared by, *or* . . . owned, used, or retained by any state or local agency."  (*San Jose*, *supra*, 2 Cal.5th at p. 617; see also § 7920.530, subd. (a).)

"[T]o qualify as a public record under CPRA, at a minimum, a writing must relate in some substantive way to the conduct of the public's business. . . .  Communications that are primarily personal, containing no more than incidental mentions of agency business, generally will not constitute public records."  (*San Jose*, *supra*, 2 Cal.5th at pp. 618-619.)  Determining whether an e-mail relates to the conduct of the public's

business "will often involve an examination of several factors, including the content itself; the context in, or purpose for which, it was written; the audience to whom it was directed; and whether the writing was prepared by an employee acting or purporting to act within the scope of his or her employment." (*Id*. at p. 618.)

### 2.    *Application*

The District targets the second element of the "public record" definition, contending that the statutory phrase "containing information relating to the conduct of the public's business" should be interpreted narrowly to mean only the business of the particular public agency in possession of the records. In an amicus brief, the California School Boards Association makes a similar argument with a different statutory tether: the Association asserts, without citation to authority, that records are only "retained" by a public agency, within the meaning of the CPRA, if the records relate to the public agency's business. But we are prohibited, by our Constitution, from interpreting the CPRA narrowly where doing so would limit public access; we are required to construe such provisions broadly. (See Cal. Const., art. I, § 3, subd. (b)(2); *San Jose*, *supra*, 2 Cal.5th at p. 617.) Accordingly, we reject the narrow constructions of the statute offered by the District and the Association. Nevarez's Oasis e-mails, writings retained by the District with content relating to the conduct of the public's business, are public records subject to disclosure pursuant to the CPRA.

First, Nevarez's Oasis e-mails are writings retained by a local agency. The District is a local agency. (See § 7920.510, subd. (d).) Because Nevarez used the District's e-mail system to send and receive the Oasis e-mails, the District retains Nevarez's Oasis e-mails. This is confirmed by the fact that the District could and did review those e-mails in responding to Sandoval's CPRA request.

Second, Nevarez's Oasis e-mails—the contents of which the District concedes "pertain solely to Oasis business"—relate to the public's business.

8

The District reviewed 1,538 of Nevarez's e-mails, including duplicates.  Including e-mails that relate to more than one topic, the District identified 842 e-mails related to Oasis board business, 148 e-mails related to Oasis events, 468 e-mails related to Oasis board members, 104 e-mails related to Oasis parent complaints, and 20 e-mails related to Oasis facilities issues.  Nevarez's Oasis e-mails relate to Oasis's business.

Oasis is a charter school.  " '[C]harter schools are *strictly* creatures of statute.' " (*United Teachers of Los Angeles v. Los Angeles Unified School Dist.* (2012) 54 Cal.4th 504, 521.)  The Legislature authorized the creation of charter schools "to 'provide opportunities for teachers, parents, pupils, and community members to maintain schools that operate independently from the existing school district structure' " to achieve various salutary purposes generally related to the quality of education.  (See *ibid.*)  "Charter schools are part of the Public School System, as defined in Article IX of the California Constitution."  (Ed. Code, § 47615, subd. (a)(1); see also *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 989.)  The business of a public school is the public's business.

The District does not directly dispute that Oasis's business is the public's business. Nevertheless, the District argues (1) that Oasis's records are not subject to production because Oasis was not subject to the CPRA at the time the District denied the requests and (2) that the District need not now respond to the request because Oasis is now subject to the CPRA, such that Sandoval can obtain the records, if appropriate, through a CPRA request to Oasis.  Both of these arguments focus on the enactment of Education Code section 47604.1, effective January 1, 2020, which expressly provides that charter schools are subject to the CPRA.  In the District's view, Education Code section 47604.1 changed, rather than clarified, the law, meaning that prior to January 1, 2020, Oasis was not required to respond to CPRA requests but since then it is.  This view, for which the District has marshalled scarce support, is unpersuasive.  The question before us is not whether Oasis was prior to 2020 required to respond to CPRA requests, it is whether

Oasis's business was the public's business. The enactment of Education Code section 47604.1 did not change that inquiry—it relates to the procedural right to submit a CPRA request to a charter school not the substantive definition of a public record. At all relevant times, Oasis was operating a public charter school. At all relevant times, Oasis was engaged in the public's business.

Further, quoting from *San Jose*, the District contends that "to qualify as a public record, a writing must . . . be the type of record 'kept by an officer because it is necessary or convenient to the discharge of his official duty." But the *San Jose* court wrote, "Generally, any 'record . . . kept by an officer because it is necessary or convenient to the discharge of his official duty . . . is a public record.' " (*San Jose*, *supra*, 2 Cal.5th at p. 618.) The *San Jose* court described a condition that is generally sufficient to demonstrate that a record is a public record, not an element that is necessary to demonstrate the existence of a public record. Nowhere does *San Jose* purport to limit the official duty at issue to the officer's duty to one public agency to the exclusion of another. Moreover, the *San Jose* court addressed the question of whether public employees' written communications about public business, made using personal accounts, may be subject to CPRA disclosure. (See *id*. at p. 614.) The *San Jose* court had no occasion to answer the different question posed here—whether a public employee's decision to use one public agency's e-mail servers to conduct public business related solely to another public agency results in the former agency retaining "public records."

Whether or not the Oasis e-mails also relate to the District's business, the District retained them. All three essential elements, as derived from the statute by the *San Jose* court, are satisfied. (See *San Jose*, *supra*, 2 Cal.5th at p. 617.) The retention element is satisfied where the document is "retained by any state or local agency regardless of physical form or characteristics." (See *ibid*.) Taking the Legislature's definition of "public record" by its plain terms does not require any public agency to produce any

10

public record, only those public records it possesses, subject to any applicable exemption. (*Id*. at p. 623; see also § 7922.535; *Anderson-Barker v. Superior Court* (2019) 31 Cal.App.5th 528, 538-539.)

The District contends, as a matter of policy, that the result reached here will create practical problems. Specifically, the District argues: (1) granting Sandoval access to Oasis's records through the District will frustrate the CPRA because the statute contemplates that a single governmental agency will provide responses regarding its own records; and (2) the District, which lacks familiarity with the context of Oasis's operations, does not have the ability to properly evaluate the application of exemptions to Oasis's records, such that Sandoval may receive information that should not be made available to him.

The District's policy arguments do not persuade us that we have misread the statute. Even if we could set aside our constitutional duty to interpret the definition of public records broadly, our resolution of the present dispute applies to the circumstance of a single individual who (1) simultaneously represents two entities that conduct the public's business; and (2) carries out the business of one of those entities using the other entity's e-mail systems. Nothing in the record or the briefing suggests this is commonplace. And the Legislature has provided a mechanism suited to such "unusual circumstances": If an agency needs to consult "with another agency having substantial interest in the determination of the request[,]" the agency may unilaterally extend its time to respond to the request due to "unusual circumstances" and conduct the consultation "with all practicable speed[.]" (See § 7922.535, subds. (b), (c)(3).)

At oral argument, the District expressed concern about liability to third parties if it discloses information that should, pursuant to other laws, be withheld, as a result of its lack of familiarity with Oasis's records and their context. The District contends that it should not face potential liability for any improper disclosure and that the means to avoid the imposition of liability is by interpreting the CPRA to require only production of

11

records a public agency retains in relation to its own business. But any Oasis records are in the District's possession because an Oasis official created and maintained those records on the District's e-mail system. And the District has stopped short of contending that any such sensitive information is actually included in the Oasis documents it possesses. Accordingly, the hypothetical risk identified by the District does not necessitate a novel interpretation of the statutory definition of public records. On the unique circumstances presented here, we are satisfied that the Legislature has provided an adequate mechanism to allow the District and Oasis to work together to protect any affected third parties from disclosure of sensitive information.

We discern no basis in the CPRA to require a member of the public seeking public records from the local agency that is in actual possession of the records to follow a maze created by a lone public official's decision as to where to generate and store the records. That result would threaten the statutory purposes by allowing a public employee's choice of e-mail platform to complicate, and potentially thwart, efforts to obtain public records.

Further, we disagree with the District's assertion that the records in question here "belong[] to another agency." To be sure, the records concern the operations of another agency. Whether or not the records are in Oasis's constructive possession, the records are in the District's actual possession, and the records belong to the public. Simply, as the agency receiving a CPRA request for public records in its actual possession, the District was required to respond to the request; it could resolve any concerns it had about the propriety of its response by consulting with Oasis.

**D.** *Personnel File*

Like the District, we interpret the trial court's order as requiring production of only those responsive documents as to which the District did not claim attorney-client privilege or attorney work product protection: Sandoval's complaint against Nevarez and two written communications, a letter and an e-mail, that the District sent to Sandoval about the complaint. In the trial court, the District prepared a "privilege/exemption"

12

(capitalization and boldface omitted) log identifying all 84 pages of responsive documents that the District withheld. In the log, the District raised attorney-client privilege or attorney work product protection as to all but the three documents. In its order, the trial court wrote: "Hartnell raises an Attorney-Client Privilege and Attorney Work Product Doctrine exemption. The court finds this claim generally well taken. Hartnell's objection to the contents described in Exhibit A to its brief are protected from disclosure. The remaining documents shall be disclosed."[3] We construe the trial court's written order as ruling that the documents as to which the District claimed attorney-client privilege and/or attorney work product protection are shielded from disclosure in full, but the remaining documents are not.

The District concedes that the three disputed documents are public records, and we are unable to accept its contention that their disclosure on this record "would constitute an unwarranted invasion of personal privacy." (See § 7927.700.)

### 1.    *Legal Principles*

Public employees have a constitutional privacy interest in the contents of their personnel file. (See *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1271 (*Marken*).) But this privacy interest is not absolute: its invasion may constitutionally be "justified by a competing interest." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 38.) The " 'strong public policy supporting transparency in government,' " "grounded in both the California Constitution and the CPRA," may justify an invasion of a public employee's privacy interest. (*Marken*, *supra*, 202 Cal.App.4th at p. 1271.)

Section 7927.700 provides an exemption that permits a government agency to refuse to disclose personnel files if the disclosure "would constitute an unwarranted

---

[3] The trial court's determination that certain documents were exempt from disclosure pursuant to the attorney-client privilege and/or the attorney work product doctrine is uncontested.

invasion of personal privacy." (*Marken*, *supra*, 202 Cal.App.4th at p. 1261; *Associated Chino Teachers v. Chino Valley Unified School Dist.* (2018) 30 Cal.App.5th 530, 537 (*Chino*); § 7927.700.) "This exemption requires us to balance . . . the public's interest in disclosure and the individual's interest in personal privacy." (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 329-330; see also *Caldecott*, *supra*, 243 Cal.App.4th at pp. 220-221.) The government agency opposing disclosure bears the burden of proving that an exemption applies. (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63 (*Los Angeles*).)

In *Marken*, the court identified three scenarios in which the government agency's refusal to produce disciplinary records from an employee's personnel file is, or may be, improper. First, "if the complaint has been upheld by the agency involved or discipline imposed, even if only a private reproval, it must be disclosed." (*Marken*, *supra*, 202 Cal.App.4th at p. 1275, citing *American Federation of State etc. Employees v. Regents of University of California* (1978) 80 Cal.App.3d 913, 919 (*American Federation*).) Second, "although disclosure is mandated if there has been a true finding by the agency, even without such a finding, if the information in the agency's file is reliable and, based on that information, the court can determine the complaint is well founded and substantial, it must be disclosed." (*Id.* at p. 1275, citing *Bakersfield School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1044.) " '[I]n evaluating whether a complaint against an employee is well founded[,] . . . courts . . . are required to examine the documents presented to determine whether they reveal sufficient indicia of reliability to support a reasonable conclusion that the complaint was well founded.' " (*Chino*, *supra*, 30 Cal.App.5th at p. 542.) Third, an individual's status as a " 'high profile' public official" may be relevant to "determine when accusations against a public official, even if not well founded, might nonetheless be subject to disclosure." (*Marken*, *supra*, 202

14

Cal.App.4th at p. 1275, citing *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 759.)

### 2. *Application*

Noting only "that Nevarez held a relatively high-ranking position as Hartnell's Director of Student Affairs and there is a sufficient showing that describes activity that raises significant concerns," the trial court ruled that "the personnel exemption is overcome." Because we are unable to discern discrete express or implied factual findings from the trial court's rationale, we review the ruling de novo. (See *Caldecott*, *supra*, 243 Cal.App.4th at p. 218.) We conclude that the District has not met its burden of demonstrating that disclosure of the personnel records in issue " 'would constitute an unwarranted invasion of personal privacy.' " (See *Marken*, *supra*, 202 Cal.App.4th at p. 1261; *Chino*, *supra*, 30 Cal.App.5th at p. 537; *Los Angeles*, *supra*, 211 Cal.App.4th at p. 63.)

The *American Federation* court drew on an analogy to "the public right to information concerning records of complaints of wrongdoing against members of the State Bar of California"—in which context "the strong public policy against disclosure vanishes" when "discipline is imposed," "even where the sanction is a private reproval"—to address whether an audit report prepared in response to an employee complaint was exempt from the CPRA. (*American Federation*, *supra*, 80 Cal.App.3d at p. 918.) The *Marken* court relied on *American Federation* for the proposition that a complaint must be disclosed if it has been upheld by the agency involved or discipline has been imposed, "even if only a private reproval." (*Marken*, *supra*, 202 Cal.App.4th at p. 1275.)

Here, the letter the District sent to Sandoval supports the inference that the District disciplined Nevarez in response to Sandoval's complaint. In the letter, the District advised Sandoval that it had completed its investigation into his complaint, telling him that the "information [he] brought forth [was] important and informative," and, "[t]o the

15

extent [his] allegations raise[d] personnel issues, . . . any potential personnel issues have been addressed. . . . [T]he District would like to formally notify you that it has taken appropriate remedial actions as a response to the findings of its investigation."

Sandoval provided a declaration describing further oral communications that were consistent with the representations in the letter. Sandoval declared that Nevarez's supervisor told Sandoval, in response to Sandoval's inquiries regarding his complaint, that the District " 'took care of it already' " and " 'it won't happen again.' "

In an effort to rebut the inference created by its own formal and informal communications with Sandoval, the District relies on written statements supplied by Rodríguez after Sandoval submitted a CPRA request. First, in his affidavit disclosing the documents the District located in connection with the relevant CPRA request, Rodríguez swore that "no disciplinary records," "written investigative report[s]," or "written memos" were created in the relevant time period. Second, in a declaration submitted in the trial court, Rodríguez testified that "District staff investigated the allegations within Petitioner's complaint and found all allegations to be unsubstantiated."

The District's evidence does not warrant the inference, in the context of the entire record, that the District did not discipline Nevarez in response to Sandoval's complaint. As outlined below, there are two fundamental defects in the District's evidence. First, the vague and general factual representation that "all allegations" in Sandoval's complaint were "unsubstantiated" is irreconcilable with the record. Second, the District addressed only written discipline, failing to address discipline that was not recorded in writing. As a result of these two considerations, Rodríguez's testimony does not rebut the inference that the District disciplined Nevarez in response to Sandoval's complaint, which is supported contemporaneous written and oral statements made by District employees who were involved in the investigative and disciplinary decisions.

Rodríguez's broad assertion that all of Sandoval's allegations were "unsubstantiated" is irreconcilable with the record. For example, Sandoval alleged that

16

Nevarez used the District's e-mail systems to send and receive Oasis e-mails, a fact that the District has confirmed without any indication that the scope of this usage comported with District policy. In its contemporaneous letter, the District only went so far as to say that "at least some of the [e-mail-related] conduct" Sandoval alleged was permissible. To the extent Rodríguez was implying that the District contemporaneously determined that Nevarez's e-mail use was in compliance with District policy and, as a result, did not discipline him, that contention is unsupported on the present record. Similarly, Sandoval's factual assertion that Nevarez was involved in awarding stipends to an individual with whom he had a personal relationship was substantiated by documentation appended to Sandoval's complaint demonstrating both the issuance of stipends and the personal relationship. To be sure, the District may, pursuant to its investigation, have determined that the stipends, and any involvement on the part of Nevarez, were appropriate, but there is no record to support that conclusion. We are presented with only a vague and conclusory characterization of the "allegations" as "unsubstantiated," which on this record is insufficient.

Rodríguez—in his exclusive focus on written records of discipline—never addressed whether Nevarez was subject to discipline that was not memorialized in a writing. (See Evid. Code, § 412.) Thus, there is no evidence that squarely addresses the inference from Sandoval's evidence that the District in fact disciplined Nevarez, in some form, in response to Sandoval's complaint. Accordingly, even if Sandoval bore the burden of *dis*proving the District's claimed exemption, Sandoval's evidence would suffice to show that the District disciplined Nevarez in response to his complaint.

Under the first test articulated in *Marken*, our conclusion is facially sufficient to determine that the exemption claimed by the District is inapplicable. But, although *Marken* interprets *American Federation* to stand for the proposition that *any* complaint resulting in discipline must be disclosed, regardless of whether the subject matter involved was substantial, the interpretation is not essential to the *Marken* court's holding,

17

as the *Marken* court explained that "the public ha[d] a legitimate interest in knowing whether and how the [school district] enforces its sexual harassment policy" with respect to classroom teachers. (*Marken*, *supra*, 202 Cal.App.4th at pp. 1274-1276.) In *American Federation*, moreover, the court "opin[ed]" that "the recorded complaint [must] be of a substantial nature before public access is permitted" under the CPRA. (*American Federation*, *supra*, 80 Cal.App.3d at p. 918.) Accordingly, we proceed to address substantiality.

The trial court found that there was "a sufficient showing that describes activity that raises significant concerns."[4] Although the District disputes whether Sandoval's allegations were substantiated, the District has not contested the conclusion that the substantive issues Sandoval raised were of "significant concern." In its own letter to Sandoval, the District described the information in Sandoval's complaint as "important and informative." We conclude that at least some aspects of Sandoval's complaint were independently substantial in nature and, as a result, the complaint as a whole was substantial in nature.

For example, the allegation that Nevarez used his position to grant stipends to a close friend[5] is independently substantial in nature. Read in the context of the attached documentation, Sandoval alleged that Nevarez was involved in District decisions to pay an individual with whom he had a close personal relationship a combined total of more

[4] In passing, the District argues that the trial court should have, but did not, conduct an in camera review of the disputed documents. But Sandoval filed his complaint and the letter from the District—two of the three disputed documents—publicly in the trial court proceedings. The District does not suggest that a review of the remaining document, an e-mail from the District to Sandoval, would assist in the resolution of the parties' dispute. The trial court was not required to review the e-mail in camera. (See *Labor & Workforce Development Agency v. Superior Court* (2018) 19 Cal.App.5th 12, 26.)

[5] We reject Sandoval's more salacious insinuations about the relationship, which are unsupported by the record.

than $1,000 in connection with two events for "[c]oordination" or "[d]ecorations" services and expense reimbursements in late 2017, alone. The thrust of this complaint is that Nevarez facilitated the misuse of public funds or at least created the appearance of a conflict of interest or self-dealing. That is a matter that is substantial in nature. (See, generally, *People v. Hubbard* (2016) 63 Cal.4th 378, 387 [discussing the Legislature's purpose in enacting Penal Code section 424 to "protect[] the public fisc and hold[] accountable those in a position to place public funds at risk"]; *Stark v. Superior Court* (2011) 52 Cal.4th 368, 391; compare *Chino*, *supra*, 30 Cal.App.5th at p. 543 [complaints that high school athletic coach yelled at and belittled student-athletes in public, among other things, were not of substantial nature because the coach "did nothing more than what most dedicated coaches do to motivate players, maintain discipline and team morale, and push athletes toward their full potential"].)

Consistent with our determination that Sandoval's complaint was substantial in nature and that the District disciplined Nevarez in response to the complaint, we conclude that the personnel file exemption is not satisfied on the present record because disclosing the disputed records would not constitute an unwarranted invasion of personal privacy.[6] The District itself wrote a letter to Sandoval thanking him for providing "important" "information" and "formally notify[ing]" him that "it has taken appropriate remedial actions as a response to the findings of its investigation." At bottom, we take the District's letter to Sandoval at face value.

---

[6] We do not address the trial court's finding that Nevarez "held a relatively high-ranking position." Nor do we address whether the public filing of any of the disputed documents themselves in the proceedings below diminished any privacy rights that may otherwise have been protected. (See, generally, *Chino*, *supra*, 30 Cal.App.5th at p. 538.)

### III. DISPOSITION

The petition for writ of mandate is denied. Sandoval shall recover his costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).) Our stay of the trial court proceedings shall dissolve upon the issuance of the remittitur.

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*Rodríguez et al. v. Superior Court*
H049836